# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARIN M. CLAY,<br><br>Plaintiff,<br><br>v.<br><br>NEWFIELD EXPLORATION COMPANY, LEE K. BOOTHBY, STEVEN W. NANCE, PAMELA J. GARDNER, EDGAR R. GIESINGER, ROGER B. PLANK, THOMAS G. RICKS, JUANITA M. ROMANS, JOHN W. SCHANCK, J. TERRY STRANGE, and J. KENT WELLS,<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Darin M. Clay ("Plaintiff"), by his undersigned attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Newfield Exploration Company ("Newfield" or the "Company") and the members of Newfield's board of trustees (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of Newfield by Encana Corporation ("Encana") (the "Proposed Transaction").

2.      On October 31, 2018, by and among Newfield, Encana, and Neapolitan Merger Corp., a Delaware corporation and an indirect, wholly-owned subsidiary of Encana ("Merger

Sub"), entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into the Company and, as a result, the Newfield will become a wholly owned subsidiary of Encana (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, each share of Newfield common stock will be converted into the right to receive 2.6719 Encana common shares (the "Merger Consideration").

4.      On December 4, 2018, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Proxy, they have failed to disclose material information that is necessary for stockholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy incomplete and misleading.  In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for the Company; and (ii) the valuation analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its fairness opinion.

6.      The special meeting of Newfield stockholders to vote on the Proposed Transaction is currently scheduled for February 12, 2019 (the "Stockholder Vote").  It is therefore imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the Stockholder Vote so that Plaintiff and the Company's other public stockholders can properly exercise their corporate suffrage rights.

7.      For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

Plaintiff seeks to enjoin Defendants from holding the Stockholder Vote and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Newfield stockholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."  *Id.* at 1316.

10.      Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Newfield's common stock trades on the NYSE stock exchange, which is headquartered in this District, which renders venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of Newfield common stock and held such stock since prior to the wrongs complained of herein.

12.     Defendant Newfield is a Delaware corporation with its principal executive offices located at 4 Waterway Square Place, Suite 100, The Woodlands, Texas 77380.   Newfield Exploration is focused on domestic, liquids-rich unconventional resource plays, located primarily in the Anadarko and Arkoma basins of Oklahoma, the Williston Basin of North Dakota and the Uinta Basin of Utah.   Newfield common stock is listed on NYSE under the ticker symbol "NFX."

13.     Defendant Lee K. Boothby is, and has been at all relevant times, a director of the Newfield, and currently serves as Chairman of the Board and the Company's President and Chief Executive Officer.

14.     Defendant Steven W. Nance is, and has been at all relevant times, a director of Newfield.

15.     Defendant Pamela J. Gardner is, and has been at all relevant times, a director of Newfield.

16.     Defendant Edgar R. Giesinger is, and has been at all relevant times, a director of Newfield.

17.     Defendant Roger B. Plank is, and has been at all relevant times, a director of Newfield.

18.     Defendant Thomas G. Ricks is, and has been at all relevant times, a director of Newfield.

19.     Defendant Juanita M. Romans is, and has been at all relevant times, a director of Newfield.

20.     Defendant John W. Schanck is, and has been at all relevant times, a director of Newfield.

21.     Defendant J. Terry Strange is, and has been at all relevant times, a director of Newfield.

22.     Defendant J. Kent Wells is, and has been at all relevant times, a director of Newfield.

23.     The parties identified in paragraphs 13 through 22 are collectively referred to as the "Individual Defendants" and/or the "Board," and together with Newfield, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.     Background of the Company and the Proposed Transaction**

24.     Newfield is a Delaware corporation, incorporated in 1988 and publicly traded on the NYSE since 1993.  The Company has been a member of the S&P 500 Index since 2010. Newfield's operations are onshore and focus primarily on large scale, liquids-rich resource plays in the Anadarko Basin of Oklahoma, the Williston Basin of North Dakota and the Uinta Basin of Utah.  In addition, Newfield has oil assets offshore of China and gas assets in the Arkoma Basin of Oklahoma.

25.     Encana is a leading North American energy producer that is focused on developing its multi-basin portfolio of oil, NGL and natural gas producing plays.  Encana's operations also include the marketing of oil, NGLs and natural gas.  All of Encana's reserves and production are located in North America.

26.     On October 31, 2018, Newfield and Encana issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**Encana announces strategic combination with Newfield
Exploration Company; intends to raise dividend by 25 percent**

**and expand its share buy-back program to $1.5 billion, post closing**

**Calgary, Alberta** (November 1, 2018)

Encana Corporation (Encana) (TSX, NYSE: ECA) and Newfield Exploration Company (Newfield) (NYSE: NFX) today announced that they have entered into a definitive agreement whereby Encana will acquire all of the outstanding shares of common stock of Newfield in an all-stock transaction valued at approximately $5.5 billion. In addition, Encana will assume $2.2 billion of Newfield net debt. The strategic combination will create a leading multi-basin company and has been unanimously approved by the Boards of Directors of both companies. Subject to receipt of regulatory and shareholder approvals by both companies, the transaction is expected to close in the first quarter of 2019.

**Strategic Rationale: shareholder returns, immediately accretive, asset quality and synergies**

- Creates a leading multi-basin company with large, premium positions in three of North America's highest-quality, oil and liquids weighted plays; the Permian, STACK/SCOOP and Montney
- Intends to raise dividend by 25 percent and expand share buy-back program to $1.5 billion following closing of the transaction; funded with expected non-GAAP free cash flow and cash on hand
- Immediately accretive to key elements of Encana's five-year plan including non-GAAP cash flow per share
- Immediate scale and value creation; oil and condensate production up by over 54 percent and proved reserves up by around 85 percent
- Adds a significant premium position in the core of the world-class, oil-rich, STACK/SCOOP in the Anadarko Basin
- Creates North America's second largest producer of unconventional resources; pro-forma third quarter 2018 production of 577,000 BOE/d, including liquids production of around 300,000 bbls/d
- Enhances already strong balance sheet; 2019 non-GAAP net debt to adjusted EBITDA expected to be about 1.5x
- $250 million of expected annual synergies through greater scale, cube development and overhead savings

"This strategic combination advances our strategy and is immediately accretive to our five-year plan," said Doug Suttles, Encana President & CEO. "Our track record of consistent execution gives us confidence to accelerate and increase shareholder returns. I

am very excited to lead the combined company and want to congratulate the team at Newfield on doing a tremendous job building premium positions in the core-of-the-core in each of their assets, particularly in the world-class, oil-rich, STACK/SCOOP. When combined with our cube development model, expected synergies and relentless focus on efficiency, we are positioned to deliver highly efficient growth and quality returns."

Lee K. Boothby, Newfield Chairman, President and CEO, stated, "This transaction is the best path forward for our company. The combination of the two companies provides our investors with the very attributes that should be differentiated in today's energy sector—operational scale, proven execution in development of large, liquids-rich onshore resource plays, a peer-leading cost structure and an exceptionally strong balance sheet.

"We strongly believe that the synergies between these two organizations will create a dominant diversified resource player that is positioned to drive future value. The new organization will be capable of efficiently developing high-value growth assets while delivering significant cash to shareholders. Throughout our 30-year history, Newfield has worked to create a strong portfolio of assets managed by some of the best and brightest people in the business. The merger will accelerate the development of these assets and as a result, capture full value for our owners."

**Encana: A leading multi-basin company with premium positions in three top North American plays**

This transaction includes approximately 360,000 net acres in the core-of-the-core of the world-class STACK/SCOOP in the Anadarko Basin. This premium, oil-weighted, stacked-pay asset contains multiple commercial and prospective zones which Encana believes are perfectly suited to its proven cube development model. This asset contains over 6,000 gross risked well locations and about 3 billion BOE of net unrisked resource.

"Consistent with our focus on being in the best parts of North America's best plays, our multi-basin portfolio will include large, premium, liquids weighted positions in three of North America's highest quality, lowest supply cost basins; the Permian, STACK/SCOOP and Montney," added Suttles. "Our multi-basin portfolio provides a powerful competitive advantage, helping us manage risk, provide optionality to direct capital to our highest margin opportunities and transfer learnings across the business."

**Encana: Increased liquids mix drives margin expansion and returns**

Following the close of this transaction, Encana expects liquids production will contribute over 50% of total company production, driving continued margin expansion and returns. Combined pro-forma third quarter 2018 production is around 577,000 BOE/d. This includes liquids production of approximately 300,000 bbls/d of which oil and condensate contributed 210,000 bbls/d. This production profile makes Encana North America's second largest producer of unconventional resources.

**Combined Pro-Forma Production Profile (Q3 2018)**

|  | Encana | Newfield | Combined |
|---|---|---|---|
| **Q3 2018 Production** | | | |
| Oil and Condensate (Mbbls/d) | 136 | 74 | 210 |
| NGL's (Mbbls/d) | 42 | 48 | 90 |
| **Total Liquids (Mbbls/d)** | **178** | **122** | **300** |
| Gas (MMcf/d) | 1,197 | 462 | 1,659 |
| **Total Production (MBOE/d)** | **378** | **199** | **577** |

**Transaction details**

The transaction has been unanimously approved by the Board of Directors of both Encana and Newfield. Newfield's board of directors has recommended that its shareholders vote their shares in favor of the merger and Encana's board of directors has also recommended that its shareholders vote to approve the issuance of Encana common shares under the transaction.

Under the terms of the merger agreement, Newfield shareholders will receive 2.6719 Encana common shares for each share of Newfield common stock. Upon completion of the transaction, Encana shareholders will own approximately 63.5 percent of the combined company and Newfield shareholders will own approximately 36.5 percent.

The transaction is subject to the terms and conditions set forth in the merger agreement, including holders of two-thirds stockholders having voted in favor of the merger, holders of a majority of votes cast by Encana shareholders having voted in favor of the issuance by Encana of its common shares, the waiting period under the U.S. Hart-Scott-Rodino Act having expired or been early terminated, the Toronto Stock Exchange and the New York Stock Exchange each

having approved the listing of the Encana common shares to be issued in the transaction and other customary conditions.

## II.   The Proxy Is Materially Incomplete and Misleading

27.   On December 4, 2018, the Board authorized the filing of the Proxy with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to cast an informed vote regarding Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

28.   First, the Proxy fails to provide sufficient information regarding financial projections for Newfield.

29.   Specifically, the Proxy describes that Newfield management prepared risked and **un-risked forecasts**.  *See* Proxy at 88, 108.

30.   However, the *Certain Newfield Unaudited Prospective Financial and Operating Information* section of the Proxy selectively discloses **only** the risked projections.  *See* Proxy at 87-89.

31.   Accordingly, it appears that Defendants selectively excised a recent and relevant set of projections that that Board reviewed when considering the Company's strategic alternatives, including remaining a standalone company.

32.   Furthermore, the Proxy states on page 88 that "Newfield's management directed J.P. Morgan to rely for purposes of J.P. Morgan's analysis upon the **risked forecasts reflecting parameters on select assumptions** because Newfield's management regarded such risked

forecasts as more reasonable and achievable than un-risked forecasts," but entirely fails to clarify what "select assumptions" were accounted for.  Consequently, Newfield stockholders are unable to what risks were accounted for in the financial projections disclosed on page 88 and their impact on the Company's expected standalone financial performance.  This information is especially material in light of the fact that Newfield management regarded the "risked forecasts as more reasonable and achievable than the un-risked forecasts," Proxy at 88, and specifically instructed J.P. Morgan to only utilize the risked forecasts in its valuation analyses.

33.    The omission of the un-risked Newfield financial projections and additional information concerning the risked forecasts considered in the Company's financial projections disclosed on page 88 of the Proxy renders the *Certain Financial Forecasts* section of the Proxy materially incomplete and misleading.  If a proxy statement discloses financial projections and valuation information, such projections must be **complete and accurate**.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—**but it may not choose half-truths.**

34.    Second, the Proxy describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Newfield's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Newfield's common stockholders.

35.     With respect to J.P. Morgan's *Net Asset Value Analysis* for Newfield, the Proxy fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the discount rates ranging from 9.00% to 11.50%; (ii) Newfield's projected net operating losses; (iii) Newfield's net debt as of September 30, 2018; and (iv) the number of fully diluted Newfield shares outstanding.  *See* Proxy at 113-14.

36.     With respect to J.P. Morgan's *Net Asset Value Analysis* for Encana, the Proxy fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the discount rates ranging from 8.50% to 11.00%; (ii) Encana's projected net operating losses; and (iii) Encana's net debt as of September 30, 2018.  *See* Proxy at 114.

37.     These key inputs are material to Newfield stockholders, and their omission renders the summary of J.P. Morgan's *Net Asset Value Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, "each of the [valuation] techniques in and of themselves is also prone to subjectivity."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Consequently, "*[t]his dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the 'right' answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions."  *Id.* at 1578 (emphasis added).

38.     Without the above-mentioned information, Newfield stockholders cannot evaluate for themselves the reliability of J.P. Morgan's *Net Asset Value Analysis*, make a meaningful

determination of whether the implied net asset per share values for Newfield and Encana reflect the true value of Newfield and Encana or were the results of J.P. Morgan's unreasonable judgment, and make an informed decision regarding whether to vote their shares in the Proposed Transaction.

39.     In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Stockholder Vote, Plaintiff will be unable to cast a fully-informed vote in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

44.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding: (i) financial projections for the Company; and (ii) the valuation analyses performed by J.P. Morgan in support of its fairness opinion

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

46.     Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.  Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections and the details surrounding discussions with other interested parties and J.P. Morgan.  Defendants knew or were negligent in not knowing that the material information

identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review J.P. Morgan's analyses in connection with their receipt of the fairness opinions, question J.P. Morgan as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.     Each of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it—which they were required to do carefully. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of the Company's financial projections.

48.     Newfield is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

49.     The misrepresentations and omissions in the Proxy are material to Plaintiff, and will deprive him of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Stockholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Newfield within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Newfield, and participation in and/or awareness of the Newfield's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Newfield, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Newfield, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy.

54.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and against the Defendants jointly and severally, as follows:

A.  Preliminarily enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above that has been omitted from the Proxy;

B.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: January 2, 2019                    **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*